WENDY MEDURA KRINCEK, ESQ., Bar # 6417
KATHRYN B. BLAKEY, ESQ., Bar # 12701
LITTLER MENDELSON
3960 Howard Hughes Parkway, Suite 300
Las Vegas, NV  89169-5937
Telephone:     702.862.8800
Fax No.:        702.862.8811
Email:          wkrincek@littler.com
Email:          kblakey@littler.com

Attorneys for Plaintiff
Roth Staffing Companies, L.P., d/b/a
Ultimate Staffing Services

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ROTH STAFFING COMPANIES, L.P., d/b/a ULTIMATE STAFFING SERVICES, a California Limited Partnership,<br><br>                    Plaintiff,<br><br>vs.<br><br>PATRICK CANOS, an individual, and DOES,<br><br>                    Defendant. | Case No. 2:17-cv-00295-JAD-PAL<br><br><br>**STIPULATED CONSENT JUDGMENT AND PERMANENT INJUNCTION** |

This matter comes before the Court on Plaintiff ROTH STAFFING COMPANIES, L.P., d/b/a ULTIMATE STAFFING SERVICES' (hereinafter "ULTIMATE STAFFING" or "Plaintiff") Complaint against Defendant PATRICK CANOS (hereinafter "CANOS" or "Defendant").

WHEREUPON, the parties have reached an agreement and have advised the Court of their desire to resolve this action, in part pursuant to the terms of this Consent Judgment and Permanent Injunction.  The resolution of this action between the parties is contingent upon entry by the Court of this Consent Judgment and Permanent Injunction.

/ / /

/ / /

/ / /

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.     CANOS shall promptly deliver to ULTIMATE STAFFING (and shall not keep in his possession, recreate or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, client lists, client contact information, other client information, correspondence, other documents or property, or reproductions of any of the aforementioned items which came into CANOS' possession pursuant to or as a result of his employment with ULTIMATE STAFFING, that constitute Confidential Information, if any (as defined in his Employment Agreement with ULTIMATE STAFFING dated July 19, 2013 and attached hereto as Exhibit A), or otherwise belonging to ULTIMATE STAFFING, its successors or assigns.

2.     CANOS will return all information, if any taken from ULTIMATE STAFFING, including any thumb drives and any information on his computers, phones, or other electronic storage devices and not retain any copies of such information.  CANOS will give complete disclosures as to how he used the information, if any taken from ULTIMATE STAFFING and to whom he disclosed it.

3.     CANOS represents that his disclosures are complete and that there was no other alleged misappropriation of ULTIMATE STAFFING's confidential business information or trade secrets.  If it is determined that CANOS has retained any confidential business information and in the event there is further discovery of misappropriation by CANOS of any ULTIMATE STAFFING Confidential Information or trade secret, CANOS will be liable for liquidated damages in the amount of $25,000 for each instance where ULTIMATE STAFFING can prove such retention or further misappropriation.

4.     For a period of one (1) year from the date of entry of this Consent Judgment and Permanent Injunction, CANOS agrees that he shall not, directly or indirectly, own an interest in, operate, join, control, or participate in, or be connected as an officer, employee, agent, independent contractor, partner, shareholder, or principal of any corporation, partnership, proprietorship, firm, association, person, or other entity and performing substantially similar duties or functions as CANOS' duties or functions as a former employee of ULTIMATE STAFFING, which directly or

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

indirectly competes with ULTIMATE STAFFING (other than as a passive stockholder in such corporations whose stock is traded on a recognized stock exchange) within 25 miles of any location at which CANOS worked, was assigned, or over which the CANOS had responsibility or supervisory authority.

5. For a period of one (1) year from the date of entry of this Consent Judgment and Permanent Injunction, CANOS shall not, directly or indirectly or by action in concert with others, solicit, induce or influence (or seek to induce or influence) any ULTIMATE STAFFING CLIENTS (collectively, referred to herein as "ULTIMATE STAFFING CLIENTS" and identified in "Exhibit B" attached hereto), or prospective clients with whom he did business within the last 18 months of his employment with ULTIMATE STAFFING, for the purpose of promoting or selling any products or services on behalf of Competitor Company or any other subsequent employer in a competitive business, until one year after the date of entry of this Consent Judgment.

6. CANOS, on behalf of himself or by action in concert with any Competitor Company, shall not accept any business from any ULTIMATE STAFFING CLIENTS if such business is the result of CANOS directly or indirectly, or by action in concert with others, soliciting, inducing or influencing such entities at any time prior to one year after the date of entry of this Consent Judgment.

7. CANOS shall not, directly or indirectly or by action in concert with others, solicit, induce or influence (or seek to induce or influence) any person who is engaged by ULTIMATE STAFFING (as a temporary or regular employee, agent, independent contractor, or otherwise) to terminate his/her employment or engagement, until one year after the date of entry of this Consent Judgment.

8. CANOS will not disclose or use any of ULTIMATE STAFFING's confidential, proprietary and/or trade secret information.

9. CANOS will abide by the terms of his Employment Agreement with ULTIMATE STAFFING dated July 19, 2013.

10. The violation of any of the terms herein may be punishable as a contempt of court.

/ / /

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV 89169-5937
702.862.8800

1    11.    In the event that ULTIMATE STAFFING proves in a court of competent jurisdiction

2    that CANOS breached Paragraph(s) 4, 5, 6, or 7, of this Consent Judgment, ULTIMATE

3    STAFFING shall be entitled to promptly recover from CANOS, Fifty Thousand Dollars and Zero

4    Cents ($50,000.00) representing agreed damages calculated as of the date of this Consent Judgment,

5    and judgment shall be entered against CANOS in that amount.   ULTIMATE STAFFING shall

6    further be entitled to recover from CANOS an amount equal to Twenty Five Thousand Dollars

7    ($25,000.00) for each instance where ULTIMATE STAFFING can prove such breach of

8    Paragraph(s) 4, 5, or 6 of this Consent Judgment.   Such recovery shall constitute stipulated

9    liquidated damages (and not a penalty) pursuant to this Stipulated Judgment.

10    12.    Notwithstanding the stipulated liquidated damages set forth in Paragraph 10 of this

11    Consent Judgment, nothing in this Consent Judgment shall prevent ULTIMATE STAFFING from

12    obtaining preliminary and/or permanent injunctive relief if a court of competent jurisdiction

13    determines that the standards applicable to the granting of an injunction have been met.

14    13.    Other than the affirmations contained herein, nothing in this Consent Judgment

15    constitutes an admission of the truth or falsity of any claims that may have been made or an

16    acknowledgment or admission of any fault or liability by any party to any other party.

17    14.    All parties shall bear its / his own costs and fees.

18

19    / / /

20

21

22    / / /

23

24

25    / / /

26

27

28    / / /

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

4.

1    15.    This Stipulated Judgment shall continue to be in full force and effect following the

2    resolution and closure of the above-captioned action, and the Court retains jurisdiction over the

3    parties to enforce same for a period of one (1) year from the date of entry of this Consent Judgment

4    and Permanent Injunction.

5

6    Dated:  September 8, 2017.
     Respectfully submitted,                          Respectfully submitted,

7

8    /s/ Marc R. Bawden, Esq.                          /s/ Kathryn B. Blakey, Esq.
     MARC R. BAWDEN, ESQ.                              WENDY MEDURA KRINCEK, ESQ.
                                                       KATHRYN B. BLAKEY, ESQ.
9    Attorney for Defendant                            LITTLER MENDELSON
     PATRICK CANOS
10                                                     Attorneys for Plaintiff

11

12                              **IT IS SO ORDERED**

13

14   _____
     UNITED STATES DISTRICT JUDGE
15   Dated: September 11, 2017.

16

17   Firmwide:149946934.1 061413.1034

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
ATTORNEYS AT LAW
3960 Howard Hughes Parkway
Suite 300
Las Vegas, NV  89169-5937
702.862.8800

5.

# **Exhibit Index**

Exhibit A – Employment Agreement

Exhibit B – Ultimate Staffing List of Clients

# EXHIBIT A

Employment Agreement

# EMPLOYMENT AGREEMENT

**(rev. 5/13)**

This Employment Agreement is made and entered into by and between Roth Staffing Companies, L.P. a California limited partnership (the "Company") and Patrick Canos (the "Employee"), effective July 19, 2013.

## AGREEMENT

In consideration of the mutual promises set forth in this Agreement, including, but not limited to, the Company's employment, continued employment, promotion or reassignment of the Employee, new or additional compensation to the Employee, specialized training and access to new and different confidential information, benefits provided under the Company's "From the Heart" Program, any one or more of which the Employee hereby acknowledges to be good and sufficient consideration, the receipt and sufficiency of which the Employee hereby acknowledges, the parties agree as follows:

## ARTICLE I.
## EMPLOYMENT

### 1.1 Employment.

The Company hereby agrees to employ the Employee and the Employee hereby agrees to serve the Company in the capacity of Business Solutions Manager, at the Ultimate Staffing, North Las Vegas, Nevada, branch location. Such employment shall be based upon the terms and conditions set forth in this Agreement.

### 1.2 Duties and Responsibilities.

During the term of employment, the Employee shall devote full time, efforts, abilities, and energies to the Company's business. The Employee shall use best efforts, skill, and abilities to promote the general welfare and interests of the Company, and any related enterprises of the Company. The Employee shall loyally, conscientiously, and professionally do and perform all such duties and responsibilities as shall be reasonably assigned by the Company and the Employee's superiors from time to time. Any job description that describes the duties and responsibilities of the Employee may be revised from time to time. The Employee shall at all times during the period of employment strictly adhere to and obey all rules, policies, and guidelines established by the Company for its employees, as such rules, policies, and guidelines are now in effect or as they may be modified by the Company, in its sole discretion, from time to time. The Employee shall not, directly or indirectly, render any services of a business, commercial or professional nature to any other person, firm or organization, whether for compensation or otherwise, while employed by the Company, unless the prior written consent of the Company has first been obtained. The Employee shall not use any confidential information belonging to a former employer during the course of employment with the Company.

### 1.3 At-Will Agreement.

The Employee's employment with the Company is for an unspecified term and is at-will. Accordingly, either the Employee or the Company can terminate the employment relationship at

will, at any time, with or without cause or prior notice. This at-will aspect of the Employee's employment, which includes the right of the Company to demote, transfer or discipline the Employee with or without cause or prior notice, cannot be changed, waived or modified, except by an individualized written employment contract to the contrary, signed by both the Employee and the Chief Executive Officer of the Company.

1.4 **Location.**
During the term of employment, the Employee shall perform his/her duties at any location owned and/or operated by the Company or any related company or at such other place or places as may be designated by the Company from time to time.

## ARTICLE II.
## COMPENSATION

2.1 **Salary.**
The Company shall pay Employee, and Employee shall accept from the Company in full payment for Employee's services hereunder, **$23.07 per hour paid to Employee on a bi-weekly basis** (or in accordance with the Company's then-current payroll policy), which equates to **$47,985.60 on an annualized basis**. This position is not eligible for overtime without advance, written authorization from senior management. Adjustments to Employee's compensation shall be made in a manner that is consistent with the Company's policies and procedures.

2.2 **Employee Benefits.**
Employee is eligible to participate in Company employee benefit programs under the terms of the then-existing Company policies commensurate with other Company employees at the same level as the Employee. These employee benefit programs currently include sick leave, vacation, medical, dental, vision, short-term and long-term disability, life insurance, and 401(k) plan.

Currently, Employee is eligible to earn vacation, which increases with the length of employment as shown in the following schedule.[1] Vacation earnings are accrued daily for Regular Full-Time Employees.

| Employment Period | Vacation Hours Per Year | Maximum Accrual |
|---|---|---|
| Each pay period from date of hire through 36 months | **80 hours** | **92 hours** |
| 37 months through 120 months | **96 hours** | **110.4 hours** |
| 121 + months | **136 hours** | **156.4 hours** |

---

[1] This schedule supersedes any accrual schedule contained in the Company's Employee Handbook as of Employee's start date, but may be modified from time to time.

In addition, eligible regular full-time employees will also accrue sick leave benefits at the rate of 0.92 hours per bi-weekly pay period up to a maximum of 95.68 hours.[2]

### 2.3     From the Heart Program.
Employee shall also be eligible for certain benefits under the Company's From the Heart Program, including, but not limited to, the Flex Schedule Program, if eligibility requirements are met, gym membership contributions, and the Community Volunteer Program. Company benefits and programs may be modified from time to time.

### 2.4     Bonus.
In addition to the salary specified in Section 2.1, the Employee shall be eligible to receive bonuses based on the terms and conditions of the **Flex Desk Schedule 2 Bonus Program,** which may be amended or modified from time to time. Please refer to the **Flex Desk Schedule 2 Bonus Program and the Bonuses and Commissions Terms and Conditions** for the entire bonus criteria. Employee must complete the entire designated bonus period to earn the bonus.

### 2.5     Auto Reimbursement.
Employee shall receive $.565 per mile (based on IRS guidelines and Company policy, subject to change), paid monthly as auto reimbursement for the use of a personal automobile on Company business.

### 2.6     Business Expenses.
Employee shall be reimbursed monthly for all Company-related business expenses that are pre-approved by his/her manager.

### 2.7     Integration Clause.
No one in the Company, other than its CEO, has the right to alter the at-will nature of the employment relationship or to change the provisions in Section 1.2. regarding the employment relationship. The CEO may only alter the nature of the employment relationship if he does so in a written agreement signed both by the CEO and the Employee. Furthermore, there are not now and may not in the future be any implied or oral agreements, covenants, or obligations that in any way affect or impair the ability of the Employee or the Company to terminate the employment relationship at will, at any time. Specifically, the Company's policies and procedures and/or Employee Handbook do not constitute a guarantee of continued employment between the Employee and the Company.

---

[2] This accrual rate supersedes any accrual rate contained in the Company's Employee Handbook as of Employee's start date, but may be modified from time to time.

# ARTICLE III.
## CONFIDENTIALITY AND RESTRICTIVE COVENANTS

3.1     **Confidentiality**.

Employee will learn Company's business affairs, finances, management, marketing programs, philosophy, customers, and methods of doing business. Employee will have access to confidential information maintained at substantial cost by the Company regarding its temporary employees, regular employees, applicants, and prospective and actual customers. This information is proprietary to the Company and, if used by competitors or other third parties, could cause substantial and irreparable damage to the Company.

Employee specifically agrees that he/she will not at any time, whether during or subsequent to the term of Employee's employment by the Company, in any fashion, form, or manner, unless specifically consented to in writing by the Company, either directly or indirectly, use or divulge, disclose or communicate to any person, firm, or corporation, in any manner whatsoever, any confidential information of any kind, nature, or description concerning any matters affecting or relating to the business of the Company, including, without limiting the generality of the foregoing, customer lists, qualified prospective customer lists, employee lists, qualified prospective employee lists, sales and marketing information, customer account records, training and operations materials, personnel records, code books, pricing information, financial information, or any other confidential information of, about, or concerning the business of the Company, its manner of operation, or other confidential data of any kind, nature, or description. The parties hereto stipulate that as between them, the same are important, material, and confidential trade secrets and affect the successful conduct of the Company's business and its goodwill, and that any breach of any term of this paragraph is a material breach of this Agreement. All equipment, notebooks, documents, memoranda, reports, computer programs, forms, files, books, correspondence, lists, other written and graphic records or other information storage devices, and the like, including innovations, ideas and developments, affecting or relating to the business of the Company, which Employee shall prepare, use, construct, observe, possess, or control shall be and remain the Company's sole property.

3.2     **Employee's Duties on Termination**.

In the event of termination of employment with the Company, Employee agrees to deliver promptly to the Company all property of the Company (including, without limitation, confidential information, keys, access cards, computers/laptops, computer software and hardware, flash drives and other computer storage devices, equipment, notebooks, documents, memoranda, reports, files, samples, books, correspondence, lists, or other written or graphic records, and the like) relating to the Company's business, which are or have been in his/her

possession or under his/her control. Employee shall permanently delete copies of any Company confidential information and other Company property that Employee has on any personal electronic equipment or media and upon the Company's request will permit the Company to verify such deletions.

### 3.3    Competition.

During the term of employment, Employee agrees that he/she will not, directly or indirectly, own an interest in, operate, join, control, or participate in, or be connected as an officer, employee, agent, independent contractor, partner, shareholder, or principal of any corporation, partnership, proprietorship, firm, association, person, or other entity which directly or indirectly competes with the Company, other than as a passive stockholder in such corporations whose stock is traded on a recognized stock exchange. For a period of one year after Employee's employment terminates (regardless of the reason for termination or whether such termination was by the Company or Employee), Employee agrees that he/she shall not, directly or indirectly, own an interest in, operate, join, control, or participate in, or be connected as an officer, employee, agent, independent contractor, partner, shareholder, or principal of any corporation, partnership, proprietorship, firm, association, person, or other entity which directly or indirectly competes with the Company (other than as a passive stockholder in such corporations whose stock is traded on a recognized stock exchange) within 25 miles of any location at which Employee worked, was assigned, or over which the Employee had responsibility or supervisory authority.

### 3.4    Organization of Competitive Business.

During the term of employment, Employee agrees that he/she will not undertake planning for or organization of any business activity competitive with the Company's business or combine or conspire with other employees or representatives of the Company's business for the purpose of organizing any such competitive business activity.

### 3.5    Solicitation of Employees.

During the term of this Agreement and for a period of one year after the employment relationship between the parties terminates (regardless of the reason for termination or whether such termination was by the Company or Employee), Employee agrees that he/she will not, directly or indirectly or by action in concert with others, solicit, induce or influence (or seek to induce or influence) any person who is engaged (as a temporary or regular employee, agent, independent contractor, or otherwise) by the Company to terminate his or her employment or engagement. This section 3.5 shall only apply to persons Employee learned of or became familiar with as a result of the employment relationship.

### 3.6    Solicitation of Customers or Prospective Customers.

During the term of this Agreement and for one year after the employment relationship between the parties terminates (regardless of the reason for termination or whether such termination was by the Company or Employee), Employee agrees that he/she will not, directly or indirectly or by action in concert with others, solicit, induce or influence (or seek to induce or influence) any customers or potential customers of the Company with whom he/she did business

within the last 18 months of employment for the purpose of promoting or selling any products or services competitive with those of the Company.

### 3.7 **Intellectual Property.**

Employee agrees that all inventions (whether or not protected under patent laws), works of authorship, information fixed in any tangible medium (whether or not protected under copyright laws), artwork, graphics, ideas, algorithms, market research, strategies, incoming and outgoing electronic communications, source code and documentation, software programs, existing and prospective clients' information, existing and prospective employees'/candidates' information, moral rights, mask works, trademarks, trade names, trade dress, trade secrets, know-how, ideas (whether or not protected under trade secret laws), and all other subject matter protected under patent, copyright, moral right, mask work, trademark, trade secret, or other laws, including without limitation all new or useful art, combinations, discoveries, formulae, manufacturing techniques, technical developments, artwork, software, programming, applets, scripts, and designs written, developed, originated, fixed or reduced to practice by Employee (collectively, "Works") shall be the sole and exclusive property of the Company. Works shall include all information relating to clients and candidates collected by Employee in any manner by any means through any media during Employee's employment. Employee hereby assigns, transfers and conveys to the Company, exclusively and perpetually, all worldwide right, title, and interest in any and all services and Works and any and all resulting copyrights, patents and trade secrets to the Company (collectively, "Proprietary Rights"). Employee agrees to execute such documents and do such acts as may be necessary to perfect, register and enforce the Company's Proprietary Rights at no charge to the Company.

## ARTICLE IV.
## MISCELLANEOUS

### 4.1 **Arbitration of Controversies**.

Employee expressly acknowledges and agrees that, to the fullest extent allowed by law, any controversy, claim or dispute between Employee and the Company (and/or any of its affiliates, divisions, owners, shareholders, directors, partners, members, officers, employees, volunteers or agents) relating to or arising out of Employee's employment or the cessation of that employment will be submitted to final and binding arbitration before a neutral arbitrator in the county in which Employee work(ed) for determination pursuant to the Federal Arbitration Act, and administered by JAMS or the American Arbitration Association in accordance with JAMS' Employment Arbitration Rules and Procedures (which can be accessed at www.jamsadr.com/rules-employment-arbitration) or with the American Arbitration Association's National Rules for the Resolution of Employment Disputes (which can be accessed at www.adr.org/sp.asp?id=32904), respectively, as the exclusive remedy for such controversy, claim or dispute.

In any such arbitration, the parties may conduct discovery to the same extent as would be permitted in a court of law. The arbitrator shall issue a written decision stating the essential findings and conclusions on which the award is based, and shall have full authority to award all remedies that would be available in court. The Company shall pay all arbitrator's fees and any

arbitration administrative expenses, to the extent required by law. Any judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.

This bi-lateral arbitration agreement covers, but is not limited to, claims of unpaid wages, breach of contract, torts, violation of public policy, discrimination, harassment, or any other employment-related claims under laws including but not limited to, Title VII of the Civil Rights Act of 1964, the Americans With Disabilities Act, the Age Discrimination in Employment Act, the Equal Pay Act, the Fair Labor Standards Act, the Family Medical Leave Act, the California Fair Employment and Housing Act, the California Family Rights Act, the California Labor Code, and any other statutes, laws, or regulations relating to an employee's relationship with his/her employer, regardless of whether such dispute is initiated by the employee or the Company. HOWEVER, EMPLOYEE SHALL HAVE NO RIGHT OR AUTHORITY TO HAVE ANY DISPUTE BROUGHT, HEARD, OR ARBITRATED AS A CLASS ACTION, COLLECTIVE ACTION, PRIVATE ATTORNEY GENERAL ACTION, OR IN A REPRESENTATIVE CAPACITY ON BEHALF OF ANY PERSON NOR SHALL EMPLOYEE HAVE ANY RIGHT OR AUTHORITY TO JOIN ANY SUCH ACTION. FURTHERMORE, THE ARBITRATOR SHALL HAVE NO RIGHT TO CERTIFY, CONSOLIDATE, OR COLLECTIVELY ARBITRATE MULTIPLE INDEPENDENT CLAIMS. This Agreement also covers any and all claims that the Company may have against Employee, including (but not limited to) claims for misappropriation of Company property, disclosure of proprietary information or trade secrets, interference with contract, trade libel, gross negligence, or any other claim for alleged wrongful conduct or breach of the duty of loyalty. This arbitration requirement does not apply to claims for workers' compensation benefits, unemployment claims, benefit claims that culminate in another arbitration process, claims arising under the National Labor Relations Act, claims arising under ERISA (29 U.S.C. §§ 1001 et. seq.), any other claims where mandatory arbitration is prohibited by law, or charges filed with federal or state administrative agencies alleging violations of federal and state laws prohibiting discrimination, harassment, and retaliation; however, Employee agrees to waive Employee's right to recover monetary damage in connection with any such charge, complaint, or lawsuit that may be filed by such administrative agency and agrees that relief obtained through binding arbitration will be Employee's exclusive individual remedy. In addition, nothing in this Agreement shall prevent the Company or Employee from applying to courts for provisional remedies . BY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH EMPLOYEE AND THE COMPANY GIVE UP ALL RIGHTS TO A TRIAL BY JURY. This bi-lateral arbitration agreement is to be construed as broadly as is permissible under applicable law.

4.2     **Governing Law and Venue.**
This Agreement and any cause of action arising out of the employment relationship shall be governed by the laws of the state in which Employee last worked for the Company, without regard to its conflicts of laws principles. Venue for any dispute involving the interpretation of this Agreement or for any cause of action arising out of the employment relationship shall be in the county in which Employee last worked for the Company. Nothing in this provision shall be interpreted to be inconsistent with the parties' agreement to arbitrate set forth in paragraph 4.1 above.

4.3  **Tolling and Severability.**

Employee agrees that the time provisions contained in Sections 3.3, 3.5 and 3.6 shall be tolled by the length of time during the period of which Employee is in breach of said provisions. Should any portion of this Agreement be determined by any arbitrator or court of competent jurisdiction to be invalid, the remainder of the Agreement will remain in full force and given an effect as near as possible to the original intent of the parties. The restrictions set forth in Article III are considered by the parties to this Agreement to be reasonable for the purpose of protecting the Company's Proprietary Information. However, if any such restriction is found by any arbitrator or court of competent jurisdiction to be unenforceable because it extends for too long a period of time or over too great a range of activities or in too broad a geographic area, it shall be interpreted to extend only over the maximum period of time, range of activities or geographic area as to which it may be enforceable.

4.4  **Injunction.**

If Employee or anyone acting for Employee breaches or threatens to breach Sections 3.2 through 3.6 of this Agreement, the Company shall have the right to seek equitable/injunctive relief, including a temporary restraining order, a preliminary injunction, and final or permanent injunctions enjoining and restraining such breach or threatened breach. Such remedies shall be in addition to all other remedies available at law or in equity for such breaches, including damages, costs, and reasonable attorneys' fees.

4.5  **Waiver.**

Either party's failure to enforce any section or sections of this Agreement shall not in any way be construed as a waiver of any such provision or provisions, or prevent that party thereafter from enforcing each and every other provision of this Agreement.

4.6  **Notices.**

Any notice to be given to the Company under the terms of this Agreement shall be addressed to the Company at the address of its principal place of business (333 City Boulevard West, Suite 100, Orange, CA 92868), and any notice to be given to Employee shall be addressed to the Employee's home address last shown on the records of the Company, or at such other address as either party may hereafter designate in writing to the other. Any such notice shall be in writing and shall be deemed to have been duly given upon personal delivery, on the second calendar day after it has been enclosed in a properly sealed and addressed envelope and sent via nationally recognized overnight courier, or on the third calendar day after it has been enclosed in a properly sealed and addressed envelope, certified, and deposited (postage and certification fee prepaid) in a post office or branch post office regularly maintained by the United States Government.

4.7  **Entire Agreement.**

This Agreement constitutes the entire agreement and understanding between the parties with respect to the subject matter hereof and supersedes any and all other agreements, communications, understandings, promises, stipulations, arrangements, whether any of the same are either oral or in writing, or express or implied, between the parties hereto with respect to the subject matter hereof, including, but not limited to, any implied-in-law or implied-in-fact covenants or duties relating to employment or the termination of employment. No change to or

modification of this Agreement shall be valid or binding unless the same shall be in writing and signed by both the Employee and the CEO of the Company.

4.8 **Disclosure of Agreement**.

The Company may disclose any portion of this Agreement to any person or organization, including actual and potential employers of Employee, without incurring liability to the Employee.

4.9 **No Set-Off By Employee**.

No demand, action, or cause of action that Employee may have against Company shall constitute a defense to the Company's enforcement of any rights under the Agreement.

IN WITNESS WHEREOF, the parties hereto acknowledge that they have read this Agreement, fully understand it, and have freely and voluntarily entered into it.

**ROTH STAFFING COMPANIES, L.P.**

By: _____

**Jennifer Simonson**
**General Counsel, Senior Vice President**

Dated: July 15, 2013

By: _____

**Patrick Canos**

Dated: 7-29-13

I have been advised to seek the advice of an attorney before signing this Agreement, and have either done so, or decline to do so.

By: _____

**Patrick Canos**

Dated: 7-29-13

9

# EXHIBIT B

Ultimate Staffing List of clients

**Customer**

Interline Brands
Cind R Lite
Pavestone
PDM Steel Service Centers, Inc
Precision Opinion
WorldPac - Las Vegas
Moen Incorporated
Quest Drape
Liquidity Services
GigaCrete
Southwest Toyotalift
Nitrex Inc.
Kareo
Nevada Restaurant Services Inc
Blue Marble Development
Pacific Supply
AWS
Allsite Structure Rentals
A & D Scenery Inc
Lakeview Cheese Company
David Saxe Productions
Christie Lites Las Vegas, LLC
Mayesh Wholesales Florist
Swisstrax
Arcata Associates
Worthington Armstrong Venture/ W.A.V.E.
Credit Managers Assoc
Coker Equipment
McNeilus Truck
Canyon State Oil Co. A Div. of SC Fuels
Jensen Precast
Columbia River Logistics
Alsco
Richard Harris Law Firm
Flooring Solutions of Nevada
Hydra-Gear Inc
Anc, American Nutritional Corp.
Deco West, Inc.
Batteries In A Flash
Qvs
Artesian Spas May Manufacturing Llc
Atlanta Classic Events

IHR Research
Armourcoat Surface Finishes Inc
Flavor Consultants
Barrel Co
Kichler Home Center
Digitek
Hynes Industries
Monster Cable Products
LC Indsutries
Spreetail
Williams Sonoma Inc
J W Marriott
1800PackRat
Derse Exhibits
Priority Plastics Inc
Standard Textile
XPO Logistics
Westcare Inc
Lift All
Source 4
Autonomy Technology Inc
Spacecraft Components
Pierce Distribution
Marshall Retail Group
SGPS
Tidewater Finance Company
HD Supply
ColeKepro Industries LLC
Cannery Casino Hotel
ISG Lighting
Competitive Component Inc
Nevada Ballet
College of Southern Nevada
Erickson International
Parker Plastics
Cramaro Tarp Systems
Anderson Dairy
Angles On Design, Inc
Legacy Chain Supply
Plus Studios
Magic Brite Janitorial
American Eagle Star
SGA Production

Reliable Steel Inc
Nevada Recycling
Aluma Systems
Temco Logistics
Custom Building Products
Pacific Paper Tube
International Market Centers
Calply
Aircare Indoor Air Quality Specialists
RW Garcia
Saint Gobain
Mac's Delivery Services Inc.
Smith Center for Performing Arts
Technibilt
Ike Gaming
Ace World Wide Moving And Storage
Astrosystems
Holdrite
Albert Uster Imports
Advantage Warehousing & Logistics
The Taylor Group
Walker Furniture Warehouse
Mechanical Products Nevada Inc.
Sigma Supply of North America, Inc.
Legacy
Spanco Cranes
Tri- Dim Filter Corporation
Beav Ex
Traction
Sun State Components, Inc
ABC Supply Co, Inc.
Pageantry Communities
Wayland S.W.
All American Convention Services
Chelten House Products
Performance Steel
Nikkiso Cryo Inc
American Tire Distributors
The Flexaust Co
Texas Station
Basic Food Flavors
Piloch Distribution
General Growth Properties - Meadows

Pabco Gypsum
Majestic Flooring
Dolphin Machine Inc
Gaming Partners International
Raymond Handling Solutions
Lied Discovery Children's Museum
Quality Investigations, Inc
American Roll Form
Priority Wire & Cable, Inc.
Nailor Industries
Salvation Army
Clean Harbors Environmental
Western Elite
Pto Sales
Rosen Materials
Safety Kleen
Kaman Industrial Technologies
Hp Enterprises, Inc
VT Construction
Arcadia Nevada North Las Vegas
United Capital Management
Steamatic
Advance Polybag-Nevada
Horizon Specialty Hospital
World Pack
Durango Construction Inc
WIS International
Superlite Block
Sandbag Store
Shadow Creek Golf Club
Screens of Mass Construction
West Coast Wellness
Forward Air
Tortillas Incorporated
R & L Carriers
Michael Foods
Ashley Furniture
Scholastic Book Fairs
Synnex Corporation
Academy of Nevada Ballet
Levi Strauss & Company - IQ Navigator
Whole Harvest West
ITT Technical Institute

Southwest Data Protection, INC
Consolidated Distribution Ctr.
Lightning Logistics
Trepco West
Prestige Travel & Cruises
El Paso - Los Angeles Limousine Express
Los Prados Community Association, Inc
Factory Motor Parts
J. S. S. Co. Inc.
Affordable Concepts, Inc
Horizon Surveys
Total Safety Incorporated
Nellis Building Materials
Gen Tech
Axle Transmission Inc
Exotics Racing
Environmental StoneWorks
Temple Sinai
JR Metal Express
P & R Paper Supply Co
Direct Grading & Paving
Cintas North Las Vegas
AD/S Companies
Right at Home
Gbs Linens
Ozzie Kraft Enterprises
Apollo Concepts
Fellowes, Inc  LI
Panda Windows & Doors
Catholic Charities
Preferred Laminations
Las Vegas Clark County Urban League
Fremont Street Experience
Firestone Building Products
The Car Doctor, Inc.
Kichler Lighting
Liquidity Services Inc
Monster Cable Products/ Operations
Alliance Plastics
Caliber Collision
Goldsmith & Guymon
Donald W Reynolds Foundation
Medical N Mobility

Desert Sunrise Dental
Southern Nevada Children First
Boston Dental Group
Animal Foundation International
Desert Plastering
Oak Harbor Freight Lines
Nevada Career Institute
Goodwill Of Southern Nevada, Inc (ERM)
Goodwill of Southern Nevada
The Premium Connection Inc
Toll Brothers
Wirtz Beverage
Bakemark Ingredients, Inc Las Vegas Mark
Janra Distribution
JS Pest Control
Cox Communications
FCS Automotive International
Konica Minolta
Las Vegas Motor Speedway
Generation Brands
Empire Logistics
Las Vegas Valley Water District
American Metal Fabricators
Dick Worthen
Pabco Building Products
Broder & Sachse
Palm Mortuary, Inc.
Exel Power Logistics
Nevada Pic a Part
Machining Specialist
Westar Architectural Group
City Wide Towing
Arc International
Johnson Brothers Of Nev
Bulk Carrier Service Inc
Southern Nevada Movers
Wildhorse Distributing
the Shade Tree
All State Fastener Corp
Southwest Linen
Ainsworth Game Technology
Standard Wholesale Supply Company
Gaylord Security

Reddy Ice
LKQ
Las Vegas Review Journal
Rakeman Plumbing
Eye-Fi
Farm Fresh Foods Inc
Global Equipment Company
Las Vegas Color GraphicsA
Metl-Span
Phoenix Industries LLC
Colleen & Tom Enterprises
KMD Inc
Cold Storage Solutions
PACCAR Inc
Vermeer
Crescent Electric Supply Co - Sunset
Big Mountain Imaging
ProCaps Labs
Custom Wicker Furniture
Desert Lumber
Las Vegas Clark County Library
Benson & Bingham
Insurance Solutions
Shea & Carlyon
Mda Muscular Dystrophy Assoc
Salem Sports
Brantley Incorporated
Inmar
MC Supply
Big D Floor Covering Supplies
Sierra Ready Mix
Twin State Equipment
APAC
Copart
Kleen-Rite Corporation
Tire Mart Co
Quality Towing
Ryan's Express Transportation Services
Caesars Entertainment - corporate
Brendyl Electric
Pinnacle Architectual Millwork, Inc
J S Auto World, Inc.
Sanitors Services

Meadow Gold Dairy
Wirtz Beverage of Nevada
Kamer Zucker & Abbott
Aristocrat Technologies - Birtcher
Medicwest Ambulance
Pulmonary Solutions
IGT
Swarts & Swarts CPA's
Core Construction
Shelby Automobiles
Ewing Bros Inc
Eagle Quest of Nevada
Jaco Environmental
Zirtual
Peccole Nevada
YMCA
Multi-Pure Corporation
Global Equipment Company, Inc
Associa Nevada South
Berco America
Bunzl California - North Las Vegas
Les Olson Co.
Nevada Pneumatic
The Hallgren Company of Nevada
Valley Broadcasting Company